IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WOODS KNOLL, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:09-CV-1219-VEH |
| | ) |
| THE CITY OF LINCOLN, | ) |
| ALABAMA, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OF DECISION

This case was tried *ore tenus* before the undersigned beginning on June 11, 2012, and ending on June 19, 2012. Accordingly, pursuant to Rule 52, Fed. R. Civ. P., the Court now finds the facts specially and states separately its conclusions of law thereon.

### I. CLAIMS AND DEFENSES

This lawsuit arises under the Federal Water Pollution Control Act a/k/a the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, and Alabama state law. It was initiated by the filing, on June 17, 2009, of Plaintiff's Complaint. (Doc. 1). The sole defendant remaining at trial is the City of Lincoln, Alabama (the "City"). After the trial, on June 20, 2012, the court entered an Order (doc. 206), requiring the parties to

set out their separate claims and defenses by post-trial pleadings, giving deadlines to file those pleadings, and stating that any claims or defenses not set out as ordered would not be considered by the court.

On June 28, 2012, Woods Knoll filed its Notice of Claims and Damages. (Doc. 207). On July 5, 2012, the City filed its Notice of Defenses. (Doc. 208). On July 19, 2012, Woods Knoll and the City each filed their respective Proposed Findings of Fact and Conclusions of Law. (Doc. 209; doc. 210).

As stated in its June 28, 2012, Notice, Woods Knoll asserts two claims:

I. [The City] knowingly, willfully, or negligently violated the United States Clean Water Act (33 U.S.C. §§ 1251, et seq.), the Alabama Water Pollution Control Act (Ala. Code 22-22-1 to 22-22-14 and 22-22A-1 to 22-22A-16), the Alabama Department of Environmental Management Alabama Administrative Code 335-6-12 *et seq.*, and the requirements of the *Alabama Handbook for Erosion Control Sediment Control, and Stormwater Management on Construction Sites and Urban Areas*.

II. Inverse Condemnation.

As to its first claim, Woods Knoll seeks injunctive relief, civil penalties, and costs of litigation, including reasonable attorney fees and expert witness fees.

As to its second claim, Woods Knoll seeks damages in the amount of $1,844,000, which Woods Knoll says is the diminution in the value of its property after the injuries caused by the City.

The City asserts the following defenses to Woods Knoll's first claim.

1. The City generally denies [Woods Knoll's] claim.

2. [Woods Knoll] failed to prove essential elements of [its] claim.

3. Any violations of the Clean Water Act ("CWA") are wholly past violations for which [Woods Knoll] may not recover.

Further, the City asserts that Woods Knoll lacks standing, due to the fact that any violations of the CWA are wholly past violations.

As to Woods Knoll's second claim, the City asserts that, under Alabama law, a cause of action for inverse condemnation cannot lie against a municipality. Further, the City generally denies this claim and asserts that Woods Knoll failed to prove each essential element of this claim. Finally, the City asserts that Woods Knoll's claim fails for failure to join Talladega County as a joint tortfeasor, to mitigate damages, and to give the pre-suit notice required by Alabama Code §§ 11-47-23 and 11-47-192, and that damages are subject to the statutory cap found at Alabama Code § 11-93-2.

## II. FINDINGS OF FACT

1. The parties are accurately set out in the preceding section of this Memorandum of Decision.

2. The City is an Alabama municipality.

3. On April 9, 2009, Woods Knoll served proper notice via certified mail upon Lincoln of the alleged CWA violations and of Woods Knoll's intent to sue.

(Doc. 158 at Ex. P at Ex. 8 at 000124-000151).

4. Woods Knoll also provided timely pre-suit notice to the United States Environmental Protection Agency and the Alabama Department of Environmental Management by sending each a copy of the April 9, 2009, letter. (Doc. 158 at Ex. P at Ex. 8 at 000136-000137).

5. Woods Knoll filed this lawsuit on June 17, 2009. (Doc. 1).

6. Woods Knoll amended its complaint several times, with the final one being filed on October 19, 2010. (Doc. 81).

7. Woods Knoll owns an approximately 239-acre parcel of real property located in the city limits of Lincoln, Alabama (the "Woods Knoll Property").

8. The City owns an approximately 160-acre parcel of real property located in the city limits of Lincoln, Alabama (the "City Property").

9. The northern boundary of both the Woods Knoll Property and the City Property front on McCaig Road.

10. There is a ditch along a portion of the northern boundary of the Woods Knoll Property and continuing along a portion of the northern boundary of the City Property (the "McCaig Road Ditch").

11. The City does not maintain the McCaig Road Ditch.

12. The McCaig Road Ditch begins on the Woods Knoll Property as a broad,

shallow swale, and becomes increasingly deeper and narrower as it extends onto the City Property.

13. The Woods Knoll Property and the City Property share a common boundary line.

14. This common boundary line is located along the eastern boundary of the Woods Knoll Property and the western boundary of the City Property.

15. The northwestern 30 acres of the City Property was, at all relevant times, grassed pasture.

16. The northwestern 30 acres of the City Property is relatively flat.

17. The northeastern portion of the Woods Knoll Property is relatively flat.

18. The northern portion of the Woods Knoll Property contains a low-lying area.

19. This low-lying area consists of three ponds that contain standing water year-round.

20. This low-lying area acts as a bowl, receiving storm water from multiple sources and directions, including water backing up from Lake Logan Martin when that lake was at or above high pool.

21. This low-lying area has historically been susceptible to flooding, including flooding from the McCaig Road Ditch.

22. Evidence established multiple causes for the historical flooding of this low-lying area: (1) beaver activity (both on the Woods Knoll Property and "lower", along the natural drainage path to the west of the Woods Knoll Property) that prevents or retards natural drainage from the Woods Knoll Property; (2) the higher elevation McCaig Road than the Woods Knoll Property along its McCaig Road frontage; (3) water backing up from Lake Logan Martin; (3) groundwater contribution from nearby springs; (4) poorly draining soils on the Woods Knoll Property; and (5) lack of maintenance of the northern portion of the Woods Knoll Property since its purchase by Woods Knoll.

23. This low-lying area of the Woods Knoll Property has always contained standing water that intermittently flows into a tributary of waters of the United States.

24. The City Property has three distinct drainage areas.

25. The eastern portion of the City Property drains north towards McCaig Road and then to the east, away from the Woods Knoll Property; this drainage has no impact on the Woods Knoll Property.

26. The northwestern portion of the City Property drains north to the McCaig Road Ditch, and then west onto the Woods Knoll Property.

27. The southwestern portion of the City Property drains in a diffuse manner west onto the Woods Knoll Property through a drainage area that is approximately

400 to 600 feet wide.

28. The activities of which Woods Knoll complains consisted of clearing and grubbing activities on a portion of the City Property.

29. These clearing and grubbing activities were completed in June of 2007.

30. The evidence fails to establish that the natural elevation and contours of the City Property were changed by these clearing and grubbing activities.

31. The evidence fails to establish that the cleared and grubbed portion of the City Property had not revegetated before the first alleged incidence of increased stormwater runoff or sediment from the City Property onto the Woods Knoll Property.

32. The northwestern portion of the City Property was not cleared or grubbed or otherwise disturbed at any time relevant to this lawsuit.

33. The earliest alleged discharge of increased stormwater runoff onto the Woods Knoll Property was more than 14 months after the City had completed its 2007 clearing and grubbing activities.

34. The evidence fails to establish that the McCaig Road Ditch was altered by the City's 2007 clearing and grubbing activities.

35. The evidence fails to establish that the City ever collected or channeled any stormwater or sediment in a manner that impacted the Woods Knoll Property.

36. The evidence fails to establish that brush piles erected by the City in

2007 eroded or otherwise resulted in discharges of stormwater runoff or sediment onto the Woods Knoll Property.

37. The evidence fails to establish that the City's 2007 clearing and grubbing activities caused any increase in quantity of stormwater runoff or sediment from the City Property onto the Woods Knoll Property.

38. The evidence fails to establish that the City's 2007 clearing and grubbing activities caused stormwater runoff or sediment to be carried from a point source on the City Property onto the Woods Knoll Property.

39. The evidence fails to establish that the City's 2007 clearing and grubbing activities caused any diminution in the value of the Woods Knoll Property.

40. The evidence establishes that Woods Knoll failed to take any steps to deflect the stormwater runoff and sediment coming from the City Property or to otherwise mitigate Woods Knoll's claimed damages.

### III. CONCLUSIONS OF LAW

**A.**   **Jurisdiction and Standing.**

1. This court has jurisdiction to hear the case under 28 U.S.C. §§ 1331, 1367 and 33 U.S.C. § 1365(a).

2. Woods Knoll has standing to assert its CWA claims. Although it is well established that "[c]itizens can only bring a citizen suit under the CWA for ongoing

or continuous violations, not for those that are wholly in the past," *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1009 (11th Cir. 2004) (citing *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 556-63, 108 S. Ct. 376, 98 L. Ed. 2d 306 (1987) (*Gwaltney I* ), *superceded by statute on other grounds as recognized in Parker*, 386 F.3d at 1005), "plaintiffs need not *prove* their allegations of ongoing noncompliance before jurisdiction attaches under [the citizen suit provision] . . . . Instead, a good faith allegation of violations that continued at the time suit was filed is sufficient for jurisdictional purposes." *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1133 (11th Cir. 1990) (citing *Gwaltney I*, 484 U.S. at 64).

**B.    Woods Knoll's CWA and Related Alabama State Law Claims Fail.**

1. "To establish a CWA violation, the plaintiffs must prove that (1) there has been a discharge; (2) of a pollutant; (3) into waters of the United States; (4) from a point source; (5) without a NPDES permit." *Parker*, 386 F.3d at 1008.

2. Given the lack of evidence that the City ever collected or channeled any stormwater or sediment, Woods Knoll has failed to show any discharge by the City from a "point source," and thus has failed to prove a CWA violation. *See Sierra Club*

*v. Abston Const. Co., Inc.*, 620 F.2d 41, 45 (5th Cir. 1980)[1] ("Gravity flow, resulting in a discharge into a navigable body of water, may be part of a point source discharge <u>if the [defendant] at least initially collected or channeled the water and other materials.  A point source of pollution may also be present</u> where [defendants] design spoil piles from discarded overburden such that, during periods of precipitation, erosion of spoil pile walls results in discharges into a navigable body of water by means of ditches, gullies and similar conveyances, <u>even if the [defendants] have done nothing beyond the mere collection of rock and other materials</u>. <u>The ultimate question is whether pollutants were discharged from 'discernible, confined, and discrete conveyance(s)</u>' either by gravitational or nongravitational means.") (emphasis added).

3. Given the passage of 14 months between the date that the City's 2007 clearing and grubbing activities had ceased and the date of the first "discharge" alleged to have been caused by such activities, and in the absence of any credible expert testimony establishing any increase in volume of stormwater or sediment, much less any causal relationship between such increase and the City's 2007 clearing and grubbing activities, Woods Knoll has failed to show any "discharge" by the City, and thus has failed to prove a CWA violation. *See Abston*, 620 F.2d at 45.

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

4. In the absence of a viable CWA claim, Woods Knoll's claims against the City for alleged violations of the Alabama Water Pollution Control Act (Ala. Code §§ 22-22-1 to 22-22-14 and 22-22A-1 to 22-22A-16), the Alabama Department of Environmental Management Alabama Administrative Code §§ 335-6-12 *et seq.*, and for alleged failure to meet the requirements of the *Alabama Handbook for Erosion Control Sediment Control, and Stormwater Management on Construction Sites and Urban Areas* also fail.

C. **Woods Knoll's Inverse Condemnation Claim Fails.**

1. "Inverse condemnation is defined as the taking of private property for public use without formal condemnation proceedings and without just compensation being paid by a governmental agency or entity which has the right or power of condemnation." *Ex parte Carter*, 395 So.2d 65, 67 (Ala. 1980); *see also Miller v. Southeast Supply Header, LLC*, No. CA 09-0067-KD-C, 2010 WL 55637, *5 (S.D. Ala. Jan. 4, 2010) (same).

2. Given the passage of 14 months between the date that the City's 2007 clearing and grubbing activities had ceased and the date of the first "discharge" alleged to have been caused by such activities, and in the absence of any credible expert testimony establishing any increase in volume of stormwater or sediment, much less any causal relationship between such increase and the City's 2007 clearing

and grubbing activities, Woods Knoll has failed to show any "taking" by the City, and thus its claim for inverse condemnation also fails.

A separate Final Judgment Order will be entered accordingly.

**DONE** and **ORDERED** this the 29th day of October, 2012.

 

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge